**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARA PALLADINO and ISABELLE BARKER, | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 2:13-cv-05641-MAM |
| THOMAS W. CORBETT, in his official capacity as Governor of Pennsylvania, and his successors in office; and KATHLEEN KANE, in her official capacity as Attorney General of Pennsylvania, and her successors in office, | |
| Defendants. | |

**PLAINTIFFS' CONSOLIDATED REPLY BRIEF IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Michael L. Banks (Pa. Bar I.D. No. 35052)
Eric Kraeutler (Pa. Bar I.D. No. 32189)
Joseph B.G. Fay (Pa. Bar I.D. No. 33480)
Vanessa R. Brown (Pa. Bar I.D. No. 315115)
Elisa P. McEnroe (Pa. Bar I.D. No. 206143)
Melina R. DiMattio (Pa. Bar I.D. No. 309787)
William O. Mandycz (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA  19103-2921
215.963.5000 (telephone)
215.963.5001 (fax)
mbanks@morganlewis.com
ekraeutler@morganlewis.com
jfay@morganlewis.com
vbrown@morganlewis.com
emcenroe@morganlewis.com
mdimattio@morganlewis.com
wmandycz@morganlewis.com

Benjamin L. Jerner (Pa. Bar I.D. No. 76202)
Tiffany L. Palmer (Pa. Bar I.D. No. 82695)
**JERNER & PALMER, P.C.**
5401 Wissahickon Avenue
Philadelphia, PA 19144
215.843.6000 (telephone)
215.843.6006 (fax)
BJerner@JPLaw.com
TPalmer@JPLaw.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   PENNSYLVANIA'S MARRIAGE RECOGNITION BAN IS UNCONSTITUTIONAL. ... 3

   A.   Pennsylvania's Marriage Recognition Ban Violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. ................................................................ 3

     1.   Pennsylvania's Marriage Recognition Ban Fails Under *Windsor*. .............................. 3

     2.   Pennsylvania's Marriage Recognition Ban Violates the Due Process Clause. ............ 7

     3.   Pennsylvania's Marriage Recognition Ban Violates the Equal Protection Clause. ..... 9

       a.   Pennsylvania's Marriage Recognition Ban is Not Rationally Related to the Promotion of Procreation. ................................................................................. 11

       b.   Pennsylvania's Marriage Recognition Ban is Not Rationally Related to the Protection of Children. ...................................................................................... 13

       c.   Tradition is Not a Legimiate State Interest that Justifies Pennsylvania's Marriage Recognition Ban. .............................................................................. 14

       d.   Pennsylvania's Marriage Recognition Ban is Not Rationally Related to Economic Jusitifications. .................................................................................. 15

   B.   The Marriage Recognition Ban Violates the Full Faith and Credit Clause. ..................... 16

   C.   The Marriage Recognition Ban Violates the Fundamental Right to Travel. .................... 17

III.  PLAINTIFFS BROUGHT A VALID LAWSUIT AGAINST THE CORRECT DEFENDANTS, AND DEFENDANTS' REMAINING DEFENSES FAIL. .................... 18

   A.   Plaintiffs Satisfy All Article III Requirements and the State Action Requirement for Section 1983. ................................................................................................................ 18

     1.   Defendants Are Liable as State Actors Under Section 1983, and Plaintiffs Have Standing to Sue Them. ................................................................................................ 20

     2.   Plaintiffs' Claims to Remedy Violations of Their Constitutional Rights Are Ripe for This Court's Review. .................................................................................................. 23

   B.   *Baker* Does Not Deprive This Court of Jurisdiction or Command its Decision. .............. 25

   C.   Neither the Statute of Limitations Nor Laches Bars This Action. .................................... 27

   D.   All Requirements for a Permanent Injunction Are Satisfied. ........................................... 29

IV.   CONCLUSION .................................................................................................... 30

## I.  INTRODUCTION

Plaintiffs Cara Palladino and Isabelle Barker (collectively, "Plaintiffs") ask this Court to end the deep and pervasive violation of their constitutional rights caused by Pennsylvania's refusal to accept their valid legal marriage, which Pennsylvania does not recognize solely because they are the same sex.  Plaintiffs moved for summary judgment (Docs. 26 & 27) because no genuine issue of material fact exists and Plaintiffs are entitled to judgment as a matter of law.

In opposition to Plaintiffs' Motion for Summary Judgment, Governor Corbett and Attorney General Kane (collectively, "Defendants")[1] present no dispute of material fact.  They do not contest that Plaintiffs were lawfully married in Massachusetts and then moved to Pennsylvania, where they now reside.  Nor do they deny that by operation of Pennsylvania's law prohibiting recognition of same-sex marriages, 23 Pa. Cons. Stat. Ann. § 1704, Plaintiffs' marriage is declared void here for all purposes.  Defendants' principle arguments are twofold: (1) that Plaintiffs have not brought justiciable claims against the correct defendants; and (2) Defendant Corbett substantively defends Pennsylvania's marriage recognition ban and argues that Plaintiffs' constitutional challenges lack merit.[2]  Defendants err in both respects.[3]

Governor Corbett's opposition, in particular, demonstrates a fundamental misunderstanding of the injustices perpetrated by Pennsylvania's law prohibiting the recognition of Plaintiffs' marriage.  This misunderstanding drives many of his defenses, such as his argument that the voiding of their lawful marriage has caused Plaintiffs no particular harm, or that

_____

[1] This consolidated reply brief is submitted in response to both Attorney General Kane's opposition and Governor Corbett's opposition.

[2] Defendant Kane does not oppose Plaintiffs' claims on the constitutional merits.

[3] *See* Sections II and III, below.  Defendant Corbett also challenges certain other aspects of Plaintiffs' claims, such as their timeliness, and whether Plaintiffs are entitled to a permanent injunction.  These arguments are addressed in Section III, below.

Plaintiffs have no fundamental right to preserve their marriage.  To be clear, Plaintiffs are harmed on a daily and continuous basis by Pennsylvania's refusal to recognize their marriage. The resulting injuries pervade **all aspects** of Plaintiffs' lives and are not limited to the loss of any single or solely tangible benefit.  Plaintiffs also suffer from innumerable injuries that may be less quantifiable but are every bit as genuine, including the pain and humiliation of state-sanctioned discrimination and stigmatization.

It cannot be disputed that the right to marriage—including the right to remain married— is fundamental.  Defendant Corbett argues that there is no fundamental right to "same-sex marriage," as if that factual difference in the sex of the spouses carries legal significance. Plaintiffs are already married and they simply want their marriage to be recognized, for **all purposes**—legal, economic, and social.[4]  That Plaintiffs are of the same sex does not change the nature of the institution of marriage, nor does it excuse the deprivation of a fundamental right that has been lawfully bestowed on them by another sovereign state.

As the parties' arguments evolve, and as a growing number of federal courts have recognized, this case increasingly aligns with *Loving v. Virginia*, 388 U.S. 1 (1967), in which the Supreme Court struck down Virginia's prohibition on marriage between persons of different races.  The Court did so without fabricating a new constitutional right to "interracial marriage." Likewise, Plaintiffs here do not seek some special or new type of marriage recognition. Plaintiffs do not ask to be recognized as "same-sex married," in the same way that Mr. and Mrs. Loving were not seeking to be recognized as "interracially married."  Just as Mr. and Mrs. Loving sought to have Virginia recognize their valid marriage from the District of Columbia,

---

[4] While Plaintiffs support the right of same-sex married couples to get married, Plaintiffs need not litigate to achieve it because they are already married.

Plaintiffs demand that Pennsylvania recognize their valid marriage from Massachusetts, where they lived, worked, and received their marriage certificate.

"[A] law repugnant to the constitution is void." *Marbury v. Madison*, 5 U.S. 137, 180 (1803). That simple but compelling proposition requires this Court, as a guardian of constitutional rights, to declare Pennsylvania's anachronistic and discriminatory law a dead letter. Defendant Corbett offers procedural ploys and stereotypical rhetoric in an attempt to preserve an 18-year-old law that can no longer withstand any level of constitutional scrutiny. His arguments, though, do not survive analysis. There are no factual disputes in this case, and there is no reason to delay Plaintiffs' achievement of the dignity, protection, and status that was conferred on them when they exchanged marital vows. For the reasons discussed below, this Court must declare the Pennsylvania marriage recognition ban unconstitutional and issue a permanent injunction directing Defendants to recognize Plaintiffs' marriage.

## II.   PENNSYLVANIA'S MARRIAGE RECOGNITION BAN IS UNCONSTITUTIONAL.

### A.   <u>Pennsylvania's Marriage Recognition Ban Violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment.</u>

Pennsylvania's marriage recognition ban deprives Plaintiffs of their liberty interest in their existing marriage and classifies Plaintiffs' marriage for unequal treatment on the basis of their sexual orientation, without serving any legitimate government interests. The marriage recognition ban is therefore unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. As set forth below, none of Defendant Corbett's arguments warrants a different outcome.

#### 1.   Pennsylvania's Marriage Recognition Ban Fails Under *Windsor*.

In *United States v. Windsor*, the Supreme Court held that a federal law prohibiting recognition of same-sex marriages violated the due process and equal protection guarantees in

the Fifth Amendment.  133 S. Ct. 2675, 2693 (2013).  The Court concluded that although the law

may have had other incidental effects, its "principal purpose and the necessary effect" were to

"impose inequality" on "a subset of state-sanctioned marriages" and to "demean those persons

who are in a lawful same-sex marriage."  *Id.* at 2694-95.  The law at issue in *Windsor* violated

the Constitution's guarantees of due process and equal protection because "no legitimate purpose

overcomes the purpose and effect to disparage and to injure those whom the State, by its

marriage laws, sought to protect in personhood and dignity."  *Id.* at 2696.

The same analysis applies to Pennsylvania's marriage recognition ban, which is equally

pernicious.  *See* Opening Br. at 27-32, 35, 42-43; *see also De Leon v. Perry*, No. SA-13-CA-

00982, 2014 WL 715741, at *23-24 (W.D. Tex. Feb. 26, 2014) (reasoning that Texas law

prohibiting recognition of same-sex marriage was unconstitutional for the same reasons that the

Supreme Court articulated in *Windsor*).  Like its federal counterpart, Pennsylvania's marriage

recognition ban targets a particular group of married individuals for unequal treatment.  *See*

Opening Br. at 27-32, 35, 42-43.  Accordingly, like the law in *Windsor*, the Pennsylvania law

denies Plaintiffs their constitutional rights to due process and equal protection.

Defendant Corbett attempts to marginalize *Windsor* by citing to portions of the majority

opinion that discuss principles of federalism.  In particular, Defendant Corbett argues that

because *Windsor* struck down a federal law that interfered with a state's definition of marriage, it

reaffirmed a state's reserved power to define and regulate marriage.  *See* Corbett Opp. at 1-2, 44-

45, 54-55.  Defendant Corbett's truncated and perhaps wishful reading of *Windsor* is at war with

the majority opinion itself, in which the Court explains that state laws regulating marriage are

"subject to Constitutional guarantees."  *Windsor*, 133 S. Ct. at 2692; *see also id.* at 2691.

Further, Defendant Corbett's attempt to distinguish *Windsor* by arguing that it involved a

challenge to a federal (as opposed to a state) law is a distinction without difference, since the

majority's constitutional reasoning applies equally to state laws prohibiting marriage recognition.

*See id*. at 2710 (Scalia, J., dissenting) ("By formally declaring anyone opposed to same-sex

marriage an enemy of human decency, the majority arms well every challenger to a state law

restricting marriage to its traditional definition.");[5] *accord Bostic v. Rainey*, No. 2:13-cv-395,

2014 WL 561978, at *16 (E.D. Va. Feb. 13, 2014) ("The propriety of invoking such [Fourteenth

Amendment] protection remains compelling when faced with the task of evaluating the

constitutionality of **state** laws.") (emphasis in original); *Kitchen v. Herbert*, No. 2:13-cv-217,

2013 WL 6697874, at *7 (D. Utah Dec. 20, 2013) ("This Court agrees with Justice Scalia's

interpretation of *Windsor* and finds that the important federalism concerns at issue here are

nevertheless insufficient to save a state-law prohibition that denies Plaintiffs their rights to due

process and equal protection under the law.").

    Defendant Corbett further contends (at 55)[6] that the reasoning in *Windsor* is inapplicable

to this case because the holding in *Windsor* was premised upon the federal (not state) law's

"unusual deviation from the usual tradition of recognizing and accepting state definitions of

marriage." This analysis suggests that *Windsor* was based solely on principles of federalism

(grounded perhaps on the Tenth Amendment) rather than on individual rights protected by the

Fifth Amendment. However, federalism concerns do not drive the holding of *Windsor*—the

---

[5] *See also Windsor*, 133 S. Ct. at 2709 (stating that "the real rationale" of the majority opinion in *Windsor* "is that DOMA is motivated by 'bare . . . desire to harm' couples in same-sex marriages. How easy it is, indeed how inevitable, to reach the same conclusion with regard to state laws denying same-sex couples marital status.") (citation omitted); *id.* at 2709-10 (describing majority's rationale as containing "transposable passages" that would also apply to state marriage recognition bans); *id.* at 2705 (stating that majority opinion contains federalist rhetoric but does not turn on federalist principles).

[6] Unless noted otherwise, references in this form are to the brief of the party at issue (in this instance, Defendant Corbett's Opposition Brief (Doc. 38)).

basis for the decision was that the federal marriage recognition ban targeted a particular group of married individuals for unequal treatment. *See Windsor*, 133 S. Ct. at 2692 ("[I]t is unnecessary to decide whether this federal intrusion on state power is a violation of the Constitution because it disrupts the federal balance. The State's power in defining the marital relation is of central relevance in this case quite apart from principles of federalism."). The relevance of the fact that defining marriage has traditionally been a matter of state concern is explained by the Court later in the *Windsor* opinion: "DOMA's unusual deviation from the usual tradition of recognizing and accepting state definitions of marriage . . . is strong evidence of a law having the purpose and effect of disapproval" of same-sex couples. *Id.* at 2693. Here, Pennsylvania's "unusual deviation" from its normal rule of recognizing marriages created in other states is similar evidence of animus.

Moreover, Defendant Corbett's truncated view of *Windsor* is refuted by the state of same-sex marriage litigation post-*Windsor*. **Every federal court** since *Windsor* to reach the merits has concluded that state laws banning recognition of same-sex marriage violate the Fourteenth Amendment, including:

- *Bourke v. Beshear*, No. 3:13-cv-750-H, 2014 WL 556729, at *9 (W.D. Ky. Feb. 12, 2014) ("[A]ll federal courts that have considered same-sex marriage rights post-*Windsor* have ruled in favor of same-sex marriage rights. This Court joins in general agreement with their analysis.");

- *Bishop v. United States*, No. 04-cv-848, 2014 WL 116013 (N.D. Okla. Jan. 14, 2014) (holding that Oklahoma constitutional and statutory provisions defining marriage as between man and woman, which had the effect of prohibiting recognition of out-of-state same-sex marriage, violated the Equal Protection Clause);

- *Kitchen*, 2013 WL 6697874 (holding that Utah's ban on same-sex marriage recognition violated Due Process and Equal Protection Clauses);

- *Obergefell v. Wymyslo*, No. 1:13-cv-501, 2013 WL 6726688 (S.D. Ohio Dec. 23, 2013) (holding that Ohio's marriage recognition bans violated Due Process and Equal Protection Clauses, and issuing an injunction requiring Ohio to recognize Plaintiffs' same-sex marriage lawfully performed in Maryland);

6

‒ *De Leon*, 2014 WL 715741 (granting a preliminary injunction barring enforcement of provisions of Texas Constitution and statutory code that banned same-sex marriage and recognition thereof, on the grounds that they violated due process and equal protection rights); and

‒ *Bostic*, 2014 WL 561978 (holding that provisions of Virginia Constitution and statutory code banning same-sex marriage and recognition thereof violated Due Process and Equal Protection Clauses).

As set forth below and in Plaintiffs' Opening Brief, this Court should reach the same conclusion.

### 2. Pennsylvania's Marriage Recognition Ban Violates the Due Process Clause.

Plaintiffs' Opening Brief (at 27-29) explained how the Pennsylvania law impermissibly deprives Plaintiffs of their protected liberty interest in their existing marriage, in violation of the Due Process Clause. In response, Defendant Corbett denies that Plaintiffs have a protected liberty interest in their marriage. He acknowledges that marriage is a fundamental right, but argues (at 40-45) that it excludes same-sex couples as a definitional matter, and that Plaintiffs are thus seeking a "new" right to same-sex marriage, which should not be recognized. Defendant Corbett's argument embodies the same discriminatory animus that prompted the adoption of the repugnant Pennsylvania law 18 years ago, and it fails for at least two reasons.

First, Defendant Corbett ignores that the particular right at issue here—the fundamental right to remain married—is deeply rooted in history and tradition, rather than some "new" right. *See* Opening Br. at 27-28 & n.22; *see also Obergefell*, 2013 WL 6726688, at *6 ("**The right to remain married** is therefore properly recognized as one that is a fundamental liberty interest appropriately protected by the Due Process Clause of the United States Constitution.") (emphasis in original). Pennsylvania has long recognized that "it would create inordinate confusion and defy the reasonable expectations of citizens whose marriage is valid in one state to hold that marriage invalid elsewhere." *In re Estate of Lenherr*, 314 A.2d 255, 258 (Pa. 1974).

7

Second, the fundamental right to get (and remain) married belongs to everyone, not just to certain classes.  *See Obergefell*, 2013 WL 6726688, at *9 n.10 (stating that the Supreme Court has never defined the right so narrowly as to separately recognize "the right to interracial marriage," "the right to inmate marriage," or "the right of people owing child support to marry"; these individual circumstances are instead recognized as encompassed within the same fundamental right to marriage); *see also Hodgson v. Minnesota*, 497 U.S. 417, 435 (1990) ("[T]he regulation of constitutionally protected decisions, such as where a person shall reside or whom he or she shall marry, must be predicated on legitimate state concerns other than disagreement with the choice the individual has made.").  Just as striking down Virginia's prohibition on marriage between persons of different races did not require the Supreme Court to recognize a new constitutional right to "interracial marriage" in *Loving*, an injunction striking Pennsylvania's unconstitutional ban on same-sex marriage recognition would not require this Court to recognize a new right to "same-sex marriage."  *See Kitchen*, 2013 WL 6697874, at *15 (analogizing state same-sex marriage prohibition to earlier prohibition of interracial marriage, and concluding that both implicated the same fundamental right to marriage); *Obergefell*, 2013 WL 6726688, at *9 n.10 (same).  It would merely recognize a basic premise that is a fundamental part of the American fabric: a marriage, lawfully entered in one state, is equally valid in another, regardless of the views of legislators who voted in a different time and context.

Although marriage by same-sex couples may be a relatively recent development in our nation's history (*see* Corbett Opp. at 43-44), that does not mean that applying the fundamental right to marriage to a new set of factual circumstances, *i.e.*, to marriage between persons of the same sex, somehow transforms it into a "new" right.  *See Kitchen*, 2013 WL 6697874, at *16 (rejecting the argument that because the right to marriage has not historically been interpreted to

include same-sex marriage, same-sex marriage is excluded from the fundamental right); *Bostic*, 2014 WL 561978, at *12 ("The reality that marriage rights in states across the country have begun to be extended to more individuals fails to transform such a fundamental right into some 'new' creation.  Plaintiffs ask for nothing more than to exercise a right that is enjoyed by the vast majority of [the state's] adult citizens.").  Interracial marriages in the United States were rare in 1967, yet that did not dictate the outcome of *Loving*.  Supreme Court precedents such as *Windsor* and the ensuing decisions by federal courts in Kentucky, Texas, Utah, Oklahoma, and Ohio have not defined the scope of fundamental rights by embracing historical prejudices and institutionalizing barriers born of intolerance.[7]  Anti-gay bias should not be the basis of an ongoing infringement of Plaintiffs' constitutional rights.

Pennsylvania's marriage recognition ban interferes with Plaintiffs' fundamental right to remain in their existing marriage, so strict scrutiny applies.  *See* Opening Br. at 29; *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (citing *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982)).  As set forth in Plaintiffs' Opening Brief (at 29-30, 35-42) and below (Section II.A.3.), Defendant Corbett cannot meet this exacting standard because the marriage recognition ban does not even satisfy rational basis review.  Therefore, the law impermissibly deprives Plaintiffs of their liberty interest in their existing marriage, in violation of the Due Process Clause.

> **3.      Pennsylvania's Marriage Recognition Ban Violates the Equal Protection Clause.**

The Equal Protection Clause "is essentially a direction that all similarly situated persons should be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  Here, the marriage recognition ban creates two unequal classes of married persons: (1)

---

[7] *See Lawrence v. Texas*, 539 U.S. 558, 572 (2003) ("[H]istory and tradition are the starting point but not in all cases the ending point of the substantive due process inquiry.").

opposite-sex couples legally married in other states, whose marriages are recognized; and (2)

same-sex couples legally married in other states, whose marriages are not recognized. *See*

Opening Br. at 33, 35.  This discrimination does not serve legitimate state interests under any

level of scrutiny, and is therefore unconstitutional.

      As an initial matter, this Court need not presume that the marriage recognition ban is

constitutional (*cf.* Corbett Opp. at 47), and may instead apply a heightened scrutiny, including:

(1)     Strict scrutiny based on the violation of Plaintiffs' fundamental right to remain
married (*see* Section II.A.2., above), or fundamental right to travel, (*see* Section II.C.,
below);

(2)     Intermediate scrutiny based on the fact that the Pennsylvania law imposes
classifications on the basis of sexual orientation (*see* Opening Br. at 34 & n.5;
*Obergefell*, 2013 WL 6726688, at *6); or

(3)     A heightened form of rational basis scrutiny of the same type that the Supreme Court
applied in *Windsor*, 133 S. Ct. at 2706 (Scalia, J., dissenting) (stating that the *Windsor*
majority "certainly [did] not **apply** anything that resembles that deferential [rational
basis] framework") (emphasis in original); *SmithKline Beecham Corp. v. Abbott
Labs.*, 740 F.3d 471, 481, 483 (9th Cir. 2014) ("*Windsor* review is not rational basis
review.  In its words and its deed, *Windsor* established a level of scrutiny for
classifications based on sexual orientation that is unquestionably higher than rational
basis review. . . . Notably absent from *Windsor*'s review of DOMA are the 'strong
presumption' in favor of the constitutionality of laws and the 'extremely deferential'
posture toward government action that are the marks of rational basis review.")
(internal citations omitted); *Bostic*, 2014 WL 561978, at *21 (refusing to defer to the
state's judgment because it was clear that the state marriage recognition ban was
motivated by animus).

      Pennsylvania's marriage recognition ban would fall under each of these levels of

heightened scrutiny, but, as set forth below and in Plaintiffs' Opening Brief (at 30, 33-42), the

law cannot stand even under traditional rational basis review.  Although rational basis review is

the lowest level of scrutiny, it does not mean "no review" at all.  *See* Opening Br. at 33-34

(stating that rational basis review is not "toothless").  Rational basis review is a two-part test; the

court must ensure that: (1) the purported state interest is legitimate, and (2) the law is rationally

and plausibly related to the purported state interest.  *See id.* at 35-38 (discussing five Supreme

Court cases—*Cleburne*, *Moreno*, *Romer*, *Garrett*, and *Eisenstadt*—where the law at issue failed rational basis review). The second requirement, in particular, "ensure[s] that classifications are not drawn for the purpose of disadvantaging the group burdened by the law." *Romer v. Evans*, 517 U.S. 620, 633 (1996). That is precisely the law's purpose here.

Relying on its legislative history, Defendant Corbett offers four state interests he contends are served by the marriage recognition ban. *See* Corbett Opp. at 49-50 & Ex. B. Each fails rational basis review because each is either: (1) an improper and deeply flawed state interest, or (2) is not rationally related to Pennsylvania's marriage recognition ban. Indeed, the legislative history confirms what should be obvious—that the real motivation for the law was prejudice against homosexuals,[8] a fact that can also be inferred from the lack of any legitimate connection to a purported state interest. *See* Opening Br. at 36, 42-45; *see also* Compl. (Doc. 1) ¶¶ 43-55 (refuting state interest justifications).

<blockquote>
a.  <u>Pennsylvania's Marriage Recognition Ban Is Not Rationally Related to the Promotion of Procreation.</u>
</blockquote>

The legislative history cited by Defendant Corbett references a purported state interest in promoting natural conception between a man and a woman: "[C]hildren enter society through the union of a man and a woman, not just a sperm and an egg. This is obvious! A sperm bank is not the equivalent of a real father." Ex. B to Corbett Opp. at 2023, *cited in* Corbett Opp. at 49. This purported interest is "so woefully underinclusive as to render belief in that purpose a challenge to the credulous." *See Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002). Pennsylvania freely recognizes marriages between individuals who cannot naturally procreate with their spouses (say, the elderly, infertile individuals, or prison inmates), or who simply

---

[8] *See, e.g.*, Ex. B to Corbett Opp. at 2022 (statement of Rep. Gamble) ("I just thank God I am going back to Oakdale, where men are men and women are women, and believe me, boys and girls, there is one heck of a difference.").

choose not to have children; given this, the marriage recognition ban is not rationally related to the promotion of "natural" procreation.  *See Bostic*, 2014 WL 561978, at *19, *22 (reasoning that promotion of procreation rationale failed rational basis test); *Bourke*, 2014 WL 556729, at *8 (same); *Bishop*, 2014 WL 116013, at *29 (same); *see also Kitchen*, 2013 WL 6697874 (rejecting procreation rationale as too attenuated because recognizing same-sex marriage would not hinder procreation for opposite-sex couples).[9]  The lack of logic to support this purported state interest suggests it is more pretext than purpose.  The real motivation behind the statute instead appears to be the intentional exclusion of same-sex couples from the institution of marriage, based on moral opposition to homosexuality.[10]

---

[9] Defendant Corbett states (at 50 & n.12) that "[n]umerous federal and state courts have agreed that responsible procreation and childrearing are well-recognized as legitimate state interests served by marriage."  The cases he cites conclude that a state law limiting marriage to different-sex couples is rationally related to promotion of procreation because same-sex couples who invest time and money in adoption or genetically assisted conception have already demonstrated a desire to create a stable, committed environment for their child, whereas opposite-sex couples, who can conceive naturally but by accident, need the institution of marriage in order to promote responsible procreation.  *See, e.g.*, *Jackson v. Abercrombie*, 884 F. Supp. 2d 1065, 1113 (D. Haw. 2012) (citing *Morrison v. Sandler*, 821 N.E.2d 15, 24-25 (Ind. App. 2005)).  This boils down to an argument that same-sex couples should not be allowed to be married because they do not "need" marriage to be good parents (but that heterosexual couples do).  Putting aside the fact that this argument is bizarre, in that it assumes a legitimate state interest in limiting marriage to those who may "need" it, each of the cases upon which Defendant Corbett relies are pre-*Windsor*, and are no longer applicable in light of *Windsor*'s recognition that same-sex couples also need the institution of marriage to protect their children from the stigma and humiliation of being regarded as a second-class family unworthy of recognition.  *See* 133 S. Ct. at 2694.

[10] Moral opposition to homosexuality pervades the legislative history.  *See, e.g.*, Ex. B to Corbett Opp. at 2023 (statement of Rep. Stern) ("Man and woman, equal yet different, complement one another . . . No same-sex relationship can mimic the genuine potential of a relationship between a woman and a man"); *see also Lawrence*, 539 U.S. at 604-05 (Scalia, J., dissenting) (stating that absent "moral disapprobation . . .what justification could there possibly be for denying the benefits of marriage to homosexual couples exercising 'the liberty protected by the Constitution'?  Surely not the encouragement of procreation, since the sterile and the elderly are allowed to marry.") (citations and alteration omitted).

b.   Pennsylvania's Marriage Recognition Ban Is Not Rationally
Related to the Protection of Children.

Plaintiffs' Opening Brief (at 41-42) explained that the state's interest in protecting

children is not rationally served by the Pennsylvania marriage recognition ban because: (1)

Pennsylvania already permits same-sex couples to adopt children; (2) the failure to recognize the

marriage of children's parents harms, not helps, the children of same-sex couples; and (3)

recognizing same-sex marriage has no effect on the ability of heterosexual couples to raise

children.[11]  Further, the child rearing rationale also fails the rational basis test because the

legislative history shows that it is based on an unfounded and prejudicial assumption that same-

sex couples are less "stable" family units.  *See* Ex. B to Corbett Opp. at 2023, *cited in* Corbett

Opp. at 50 (statement of Rep. Stern) ("[A] committed, faithful, and lifelong relationship between

a woman and a man is the best environment for children.  Every child deserves a stable home

with her real mother and father.").  That discredited assumption[12] reveals the animus underlying

Pennsylvania's marriage recognition ban.  *See Bostic*, 2014 WL 561978, at *19 (finding that the

"for-the-children' rationale . . . rest[ed] upon an unconstitutional, hurtful, and unfounded

---

[11] *See also Windsor*, 133 S. Ct. at 2694-95 (discussing harm to children caused by failure to
recognize same-sex marriage); *accord Bostic*, 2014 WL 561978, at *18, *22; *Bishop*, 2014 WL
116013, at *31; *Kitchen*, 2013 WL 6697874, at *26; *Obergefell*, 2013 WL 6726688, at *20.

[12] Governor Corbett's brief does not precisely say that a ban on same-sex marriages is rationally
related to a legitimate state interest with respect to raising children; rather, it argues "[s]ome
members of the General Assembly identified child rearing and the well-being of children as a
state interest and thought 23 Pa.C.S. §§ 1102 and 1704 to be rationally related to that interest."
Corbett Opp. at 50.  But no facts are provided to support that "thought."  "Children raised by gay
or lesbian parents are as likely as children raised by heterosexual parents to be healthy,
successful, and well-adjusted."  *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 980-81 (N.D.
Cal. 2010).  In the field of developmental psychology, "the research supporting this conclusion is
accepted beyond serious debate."  *Id.*; *see also* Amicus Br. for the Am. Psychological Ass'n et
al., at 18-26, *United States v. Windsor* (No. 12-307); Amicus Br. for the Am. Sociological Ass'n,
at 6-14, *United States v. Windsor* (No. 12-307).

presumption that same-sex couples cannot be good parents"). Therefore, the purported state

interest in child rearing fails the rational basis test.

c.    <u>Tradition Is Not a Legitimate State Interest that Justifies<br>Pennsylvania's Marriage Recognition Ban.</u>

As set forth in Plaintiffs' Opening Brief (at 38-39), so-called tradition, standing alone,

cannot justify the Pennsylvania marriage recognition ban, any more than it justified anti-

miscegenation laws in *Loving*.[13]  Nor can it justify this law in combination with any other

purported state interest, since the legislative history shows that Pennsylvania's goal in

"preserving tradition" was actually to codify "moral opposition to same-sex marriages."  Ex. B to

Corbett Opp. at 2017 (statement of Rep. Egolf), *cited in* Corbett Opp. at 50; *see also id.* at 2019

(statement of Rep. Egolf) (stating that Pennsylvanians "do not want our traditional marriage

institution and our state of morals to be changed").  Moral disapprobation is not a permissible

justification and cannot save a law from constitutional attack.  *See Lawrence*, 539 U.S. at 577

("[T]he fact that the governing majority in a State has traditionally viewed a particular practice

as immoral is not a sufficient reason for upholding a law prohibiting the practice." (citing *Bowers*

*v. Hardwick*, 478 U.S. 186, 216 (1986) (Stevens, J., dissenting)); *Bishop*, 2014 WL 116013, at

*27, *29 (rejecting morality as impermissible justification that could not save law from

---

[13] On this point, *Loving* is particularly instructive.  *Accord Bourke*, 2014 WL 556729, at *7
("Usually, as here, the tradition behind the challenged law began at a time when most people did
not fully appreciate, much less articulate, the individual rights in question.  For years, many
states had a tradition of segregation and even articulated reasons why it created a better, more
stable society.  Similarly, many states deprived women of their equal rights under the law,
believing this to properly preserve our traditions.  In time, even the most strident supporters of
these views understood that they could not enforce their particular moral views to the detriment
of another's constitutional rights.  Here as well, sometime in the not too distant future, the same
understanding will come to pass."); *De Leon*, 2014 WL 715741, at *23 (tradition did not pass
rational basis review); *Bostic*, 2014 WL 561978, at *14, *21-22 (same); *Kitchen*, 2013 WL
6697874, at *27 (same); *Obergefell*, 2013 WL 6726688, at *20 (same).

14

constitutional attack, even under rational basis review).  Therefore, the purported state interest in preserving tradition fails the rational basis test.

> d.   Pennsylvania's Marriage Recognition Ban Is Not Rationally Related to Economic Justifications.

During deliberations, certain legislators expressed concern that allowing same-sex marriage would place an "unfunded mandate on our business community" by forcing "existing pension or insurance program[s]" to "include an entirely new supply of so-called spouses."  Ex. B to Corbett Opp. at 2017 (statement of Rep. Egolf), *cited in* Corbett Opp. at 50.  To limit their liability created by this "new supply of . . . spouses," providers "would have to cancel and re-write [their benefit] agreements, and future agreements might even delete the coverage of spouse and family that Pennsylvania workers have come to depend on."  *Id.*  In addition to the reasons previously set forth in Plaintiffs' Opening Brief (at 39-41), voiding existing same-sex marriages bears no rational relationship to this purported economic interest because, as even Rep. Egolf conceded, Pennsylvania does not require businesses to provide benefits to employees' opposite- or same-sex spouses; instead, companies may extend or not extend such benefits as they see fit. *See id.* at 2018 (questioning by Rep. Cohen); *see also id.* at 2022 (statement of Rep. Thomas) (stating that a private insurance company already **voluntarily** extended benefits to same-sex relationships).  Accordingly, banning same-sex marriage would not impact companies' voluntary decisions to extend or not extend benefits, and the "economic effects" rationale, like each of the other purported justifications for the Pennsylvania law, fails rational basis review.[14]

---

[14] Moreover, Pennsylvania's marriage recognition ban complicates the benefits landscape post-*Windsor*, given that the federal government has made clear that same-sex marriages are recognized as valid for federal benefits, regardless of whether the couple's state of domicile recognizes their marriage.  *See, e.g.*, Guidance to Employee Benefit Plans on the Definition of "Spouse" and "Marriage" Under ERISA and the Supreme Court's Decision in *U.S. v. Windsor*, Tech. Release 2013-04 (Dep't of Labor Sept. 18, 2013).

Of course, relying on costs to businesses as a justification for discrimination in this context cannot withstand any form of scrutiny. If business expenses were an issue, perhaps Pennsylvania might refuse to recognize all out-of-state marriages, as every opposite-sex spouse who enters the Commonwealth may be a drain on company benefit plans. Or maybe the legislature would void opposite sex marriages to spouses who arrive in Pennsylvania with pre-existing medical conditions. Discussion of business expense as a rationale for Pennsylvania's marriage ban is a failed attempt to find an economic rationale for an impermissibly punitive law.

      **B.**      <u>**The Marriage Recognition Ban Violates the Full Faith and Credit Clause.**</u>[15]

Governor Corbett's Full Faith and Credit Clause argument ignores the arguments that Plaintiffs have actually made. Referring to whether Section 1983 is a viable vehicle for a Full Faith and Credit Clause challenge, Governor Corbett complains that "Plaintiffs cavalierly label the Governor's argument . . . as 'unpersuasive' based on nothing more than Plaintiffs' disagreement with established precedent." Corbett Opp. at 24. Actually, Plaintiffs devoted almost five pages of their opening brief to this issue, beginning with the words of the statute. *See* Opening Br. at 52-56. Plaintiffs **did** specifically refer to Governor Corbett's reliance on the non-controlling opinion in *Adar v. Smith*, 639 F.3d 146 (5th Cir. 2011), as "unpersuasive," and explained why—principally because the court in *Adar* read the Clause as applying not to states but only to state courts. The language of the Clause itself makes this "unpersuasive."

While clinging to *Adar*, Governor Corbett ignores Plaintiffs' discussion of *Rosin v. Monken*, 599 F.3d 574 (7th Cir. 2010), and *Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir.

---

[15] Defendant Corbett discusses the Full Faith and Credit Clause and the right to travel in the motion to dismiss portion of his brief (at 22-30), but then incorporates that discussion into the summary judgment portion of his brief (at 56). Plaintiffs therefore properly address his arguments as part of their summary judgment reply.

2007), both of which Plaintiffs cite in support of their position.  These appellate cases are not even described as "unpersuasive"—they are just ignored.

Governor Corbett also argues (at 25-26) that marriage certificates (involving only two persons) should be treated like statutes (of general application) rather than judgments (involving only the parties) and that Section 2 of the Defense of Marriage Act in any event shields Pennsylvania law from challenge under the Full Faith and Credit Clause.  Plaintiffs have previously addressed those arguments.  *See* Opening Br. at 49-52.

In the end, Governor Corbett's argument would make Full Faith and Credit optional— subject to abrogation by the several states, or Congress, or both.  Such a reading would undermine the basic purpose of the Clause.  *See* Opening Br. at 51.[16]

## C.        The Marriage Recognition Ban Violates the Fundamental Right to Travel.

Pennsylvania's marriage recognition ban is also unconstitutional because it violates Plaintiffs' fundamental right to travel and cannot satisfy the strict scrutiny analysis that applies to violations of this fundamental right.  *See* Opening Br. at 56-59.  Defendant Corbett argues (at 28) that there is no violation of the right to travel because "the goal" of the law was not to discourage anyone from moving to Pennsylvania.  But that is only one of three bases for finding a violation of that right:  "A state law implicates the right to travel when it [1] actually deters such travel, [2] when impeding travel is its primary objective, or [3] when it uses any classification which serves to penalize the exercise of that right."  *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898,

---

[16] Governor Corbett does not suggest that Plaintiffs lack standing to challenge Section 2 of DOMA specifically because it does not cause their injury (which is understandable in light of his reliance on that provision to deflect Plaintiffs' argument that Pennsylvania's non-recognition law violates the Full Faith and Credit Clause, *see* Brief of Defendant Thomas Corbett in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Doc. 20-1) at 33-36)); he likewise does not respond to Plaintiffs' argument that Section 2 of DOMA violates the due process and equal protection guarantees of the Fifth Amendment for all the reasons set forth in *Windsor* regarding Section 3 of DOMA.  *See* Opening Br. at 51-52.

903 (1986) (internal quotation marks and citations omitted).  Here, the violation of Plaintiffs'

right to travel does not turn on Pennsylvania's intention to impede travel (the second basis in

*Soto-Lopez*); it is instead grounded in the law having the effect of penalizing Plaintiffs' exercise

of their fundamental right to travel (the third basis in *Soto-Lopez*).  *See* Opening Br. at 57-58.[17]

*       *       *

For the reasons stated herein and in Plaintiffs' Motion for Summary Judgment, this Court

can—and should—find that Pennsylvania's marriage recognition ban violates Plaintiffs'

constitutional rights on numerous (and each sufficient) grounds.

## III.  PLAINTIFFS BROUGHT A VALID LAWSUIT AGAINST THE CORRECT DEFENDANTS, AND DEFENDANTS' REMAINING DEFENSES FAIL.

### A.  Plaintiffs Satisfy All Article III Requirements and the State Action Requirement for Section 1983.

Defendants raise a number of defenses arguing that this Court has no power to vindicate

Plaintiffs' constitutional rights.  These defenses—which rest upon common contentions, and do

not involve the unconstitutionality of the marriage ban—include:

–   Defendant Kane's argument (at 3-6) that Plaintiffs do not have standing to sue her, based on her contention that she is not specifically charged with enforcing the Pennsylvania marriage recognition ban;[18]

–   Defendant Corbett's argument (at 32-34) that Plaintiffs cannot proceed against him as a "state actor" under Section 1983 because he did not enforce or threaten to enforce the marriage recognition ban against Plaintiffs;[19]

---

[17] Although the type of classifications most typically adjudicated under the right to travel involve classifications with durational residency requirements (*cf.* Corbett Opp. at 29), the right protects against "**any classification**" that penalizes travel.  *See Soto-Lopez*, 476 U.S. at 903 (emphasis added, internal quotation marks and citation omitted).

[18] Defendant Kane argues this point both as a reason to grant her Motion to Dismiss as well as a reason to deny Plaintiffs' Motion for Summary Judgment, so Plaintiffs properly address it.

[19] This argument simply re-packages Defendant Corbett's motion to dismiss arguments (at 10-22) regarding Eleventh Amendment immunity and the Article III case and controversy requirement, in that the motion to dismiss arguments also rest on the contention that Defendant Corbett did not enforce or threaten to enforce the marriage recognition ban against Plaintiffs.

– Defendant Corbett's argument (at 59) that Plaintiffs' claims are not ripe for adjudication because, "[w]ith the exception of the issue surrounding Plaintiffs' son's birth certificate . . . Plaintiffs do not describe or reference a single concrete benefit or right that they have sought in Pennsylvania and that was denied as a result of Pennsylvania's Marriage Law."

– Finally, regarding Plaintiffs' son's birth certificate, which originally did not list Plaintiff Palladino as a parent, Defendant Corbett argues (at 62) that Plaintiffs lack standing to sue based on this occurrence because Plaintiffs were not injured and were instead "treated in the same manner as any other couple—whether heterosexual or same-sex—who have conceived their child through assisted conception."

As a threshold matter, each of Defendants' arguments fails because each is based on a significant misunderstanding of the nature of the harm for which Plaintiffs seek relief. Plaintiffs do not bring this case because they have been denied one particular tangible benefit. For example, they do not seek a marriage license from a Clerk of the Pennsylvania Orphans' Court (*cf.* Kane Opp. at 4), as they are already married. *See* Barker Decl. (Doc. 27-2) ¶¶ 6-7, 12. Nor do they seek a new birth certificate for their son from the Department of Health (*cf.* Kane Opp. at 4). *See* Barker Decl. (Doc. 27-2) ¶¶ 13-16.

Instead, Plaintiffs have been harmed to a much greater degree by the wholesale legislative voiding of their marriage for **all** purposes. Plaintiffs contend that marriage is itself beneficial, and the right to remain married equally so. Governor Corbett takes a different tack, attempting to pigeonhole Plaintiffs' claims as fitting into a particular limited context, and missing that Plaintiffs seek to vindicate their full right to the privileges of their existing marriage, *in toto*, with all of its trappings. *See Windsor*, 133 S. Ct. 2674 ("Responsibilities, as well as rights, enhance the dignity and integrity of the person. And [the law] contrives to deprive some couples married under the laws of their State, but not other couples, of both rights and responsibilities"); *De Leon*, 2014 WL 715741, at *23 ("As the Supreme Court has recognized,

---

Essentially this is an argument that Pennsylvania's refusal to recognize same sex marriages is an orphan for which no one is responsible, and which therefore cannot be challenged.

marriage conveys a host of rights, responsibilities, and benefits beyond the mere act of engaging

in the ceremony of marriage.") (citing *Windsor*, 133 S. Ct. at 2694-96).

Without relief from this Court, Plaintiffs will suffer continuous and innumerable injuries

extending far beyond the loss of any single tangible benefit, including the violation of their

constitutional rights and the resulting pain and stigma from the unequal treatment of their

marriage.  It is beyond dispute that these are cognizable injuries.  *See Allen v. Wright*, 468 U.S.

737, 755 (1984) (stating that stigma and humiliation resulting from state-sanctioned

discrimination are cognizable injuries); *Ne. Fla. Chapter of the Associated Gen. Contractors of

Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (stating that an "injury in fact . . . is the

denial of equal treatment resulting from the imposition of the [allegedly discriminatory] barrier,

not the ultimate inability to obtain the benefit").  Further, as set forth below, Plaintiffs have

standing to seek relief for these injuries by suing Defendants Corbett and Kane as state actor

defendants under Section 1983, and Plaintiffs' claims are ripe for this Court's review.

### 1.   Defendants Are Liable as State Actors Under Section 1983, and Plaintiffs Have Standing to Sue Them.

Neither Defendants' standing arguments nor their arguments about the state action

requirement in Section 1983 preclude this Court from reaching the merits of this lawsuit.[20]  A

recent federal district court decision, which granted a preliminary injunction to bar enforcement

of Texas' laws banning same-sex marriage and recognition thereof, is instructive.  *See De Leon*,

2014 WL 715741, at *1.  In *De Leon*, which included a claim brought under 42 U.S.C. § 1983

naming the governor and attorney general as defendants, *see* Compl., C.A. No. 13-cv-00982

(Doc. 1), the court resolved concerns about the plaintiffs' standing and whether the defendants

---

[20] Plaintiffs address the standing and Section 1983 arguments together because both are based on the same contention that Defendants did not enforce or threaten to enforce the marriage recognition ban against Plaintiffs.  *See* Kane Opp. at 3-6; Corbett Opp. at 10-21, 32-34.

caused any of the plaintiffs' injuries in a single sentence:  "Plaintiffs have also established the causation element needed for standing, as the injuries raised [state sanctioned discrimination, stigma, and humiliation] are directly related to Texas' ban on same-sex marriage."  *De Leon*, 2014 WL 715741, at *8 (citation omitted).[21]

The standing and state action requirements are satisfied because Pennsylvania's marriage recognition ban is self-enforcing, meaning that the harm it causes does not require affirmative enforcement activity by any particular official.  *See* Opening Br. at 12-22.  Instead, the marriage recognition ban states in full:

> It is hereby declared to be the strong and longstanding public policy of this Commonwealth that marriage shall be between one man and one woman.  A marriage between persons of the same sex which was entered into in another state or foreign jurisdiction, even if valid where entered into, shall be void in this Commonwealth.

23 Pa. Cons. Stat. Ann. § 1704.  Thus, the Pennsylvania marriage recognition ban "is drafted to be self-enforcing" because "the alleged impact upon [P]laintiffs"—the voiding of their marriage for all purposes—"is immediate and occurs without the active participation of or enforcement by state officers.  In such a context a concrete case or controversy may exist, even absent overt adverse action by named defendants."  *See Allied Artists Pictures Corp. v. Rhodes*, 473 F. Supp. 560, 570 (S.D. Ohio 1979) (denying pre-trial motion to dismiss); *see also Allied Artists Pictures Corp. v. Rhodes*, 496 F. Supp. 408, 425-28 (S.D. Ohio 1980), *aff'd in part, remanded in part on other grounds*, 679 F.2d 656 (6th Cir. 1982) (rejecting post-trial challenges to standing under

---

[21] A County Clerk and the Commissioner of the Texas Department of Health Services were also named as defendants, but their actions were directed against those plaintiffs who were not yet married, and wished to be married in Texas; they did not act against the set of plaintiffs who were already married and wished to have their marriage recognized, which did not require action by the County Clerk or Commissioner to issue a Texas marriage certificate.  *See De Leon*, 2014 WL 715741 at *1-3, *7.

Eleventh Amendment and Article III's case and controversy requirement).

Defendant Corbett, relying on *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988), and in turn, *1st Westco Corp. v. School District of Philadelphia*, 6 F.3d 108 (3d Cir. 1993) (which simply applied *Rode*'s holding), continues to claim that *Allied Artists* is inapplicable.  *See* Corbett Opp. at 13, 20-21, 32-34.  But he ignores the fact that, rather than reject *Allied Artists*, the Third Circuit in *Rode* **distinguished** it.[22]  *Rode*, 845 F.2d at 1208-09.  The court in *Rode* noted that, unlike the regulation before it, *Allied Artists* "was concerned with a primarily self-enforcing statute."  *Id.* at 1208.  The court in *Rode* further stated that, unlike in *Allied Artists*, where "[t]he plaintiff would have been barred from challenging the statute by the eleventh amendment unless it could name the Governor as the defendant," the plaintiff in *Rode* could vindicate its rights by suing other defendants."  *Id.* at 1208-09.[23]

The law at issue in the present case is analogous to that in *Allied Artists* because it is self-enforcing, and is not analogous to the law in *Rode*, which was not.  In other words, because *Rode* did not involve a self-enforcing statute, it is inapplicable.  *See* Opening Br. at 9-10 & n.9.  Further, as in *Allied Artists*, but unlike in *Rode*, there is no other combination of defendants, besides Governor Corbett and Attorney General Kane, in their official capacities as

___

[22] Nor do Defendant Corbett's other cases (cited at 21) reject *Allied Artists*.  The citation to *Allied Artists* in *Children's Healthcare v. Deters* is after a "but see" signal noting that *Allied Artists* differs from other cases.  *See* 92 F.3d 1412, 1414-15 (6th Cir. 1996) (en banc).  In any event, *Children's Healthcare* is distinguishable because the court there reasoned that, unlike here, the plaintiffs were not seeking to enjoin enforcement of an allegedly unconstitutional statute.  *See id.* at 1416.  Next, in *Okpalobi v. Foster*, the court distinguished *Allied Artists* as involving a statute "dealing with the relations between the state and the individual," rather than a statute that served purely private interests.  244 F.3d 405, 421 (5th Cir. 2001).  But here, as in *Allied Artists*, the statute at issue regulates a quintessential relationship between the state and the individual, *i.e.*, whether the state considers the individual to be married.

[23] The plaintiff in *Rode* challenged an employment termination perpetrated by other actors, rather than the governor, and there were other defendants squarely involved.  845 F.2d at 1207-08.  The claims were not based on the governor's general obligation for self-enforcing laws.

Pennsylvania's chief executive and chief law enforcement officer, respectively, who can better vindicate Plaintiffs' constitutional rights.[24]  *See id.* at 14-22.  Therefore, given the self-enforcing nature of the statute, Plaintiffs have satisfied the standing and state action requirements.[25]

Finally, regarding the state action requirement for Section 1983 in particular, Defendant Corbett states (at 33) that the standard is "personal direction or actual knowledge and acquiescence."  Here, it is undisputed that Plaintiffs are validly married in Massachusetts, but their marriage is deemed void in Pennsylvania.  Defendant Corbett has knowledge of this fact but has not taken any action to recognize or validate Plaintiffs' marriage.  The state action requirement for Section 1983 is therefore satisfied by Defendant Corbett's knowledge and acquiescence.

### 2. Plaintiffs' Claims to Remedy Violations of Their Constitutional Rights Are Ripe for This Court's Review.

Defendant Corbett's ripeness arguments are based on the counter-intuitive argument that Plaintiffs have suffered no harm as a result of the voiding of their lawful marriage.  *See, e.g.,*

---

[24] Defendant Kane suggests (at 4) that Plaintiffs could instead sue a Clerk of Orphans' Court or the Secretary of Health.  But, consistent with the statutory provisions that Defendant Kane cites (none of which are the actual Pennsylvania marriage recognition ban, *see* 20 Pa. Cons. Stat. Ann. § 711(19), 23 Pa. Cons. Stat. Ann. §§ 1104, 1106), these officers have responsibilities concerning the issuance of marriage certificates.  Plaintiffs do not seek a Pennsylvania marriage certificate.  They already have a Massachusetts marriage certificate, but the Pennsylvania marriage recognition ban, 23 Pa. Cons. Stat. Ann. § 1704, renders it void.

[25] Defendants Kane and Corbett also rely on *Bishop v. Oklahoma*, 333 F. App'x 361 (10th Cir. 2009), where the Court dismissed for lack of jurisdiction a challenge to a provision of the Oklahoma constitution banning same-sex marriage.  *Bishop* is not binding on this Court; indeed, it is not even binding in its own Circuit.  *See id.* at 362 ("This order and judgment is **not binding precedent**.") (emphasis added).  In addition to the reasons set forth in Plaintiffs' Opening Brief (at 9 n.9), this Court should not follow *Bishop* because the court there presumably was not presented with arguments that the law at issue was self-enforcing.  *See id.* at 363 ("[T]he [plaintiffs] chose not to take advantage of several opportunities to file a compliant brief . . . and the [defendants] decided to forego oral argument.").  Similarly, *Robicheaux v. Caldwell*, No. 13-5090, 2013 U.S. Dist. LEXIS 168800, at *5-6 (E.D. La. Nov. 27, 2013), to which Defendant Corbett cites, does not consider whether the self-enforcing nature of Louisiana's ban on same-sex marriage was sufficient to satisfy standing requirements, and is therefore inapposite here.

Corbett Opp. at 60 ("Plaintiffs have not demonstrated any hardship they would suffer if the Court were to decline to consider the merits of their claim."). Defendant Corbett loses his mooring to practical reality on this point because, as set forth above, he misconstrues the nature of the harm for which Plaintiffs seek relief. As noted above, Plaintiffs do not seek relief for any single loss of a tangible benefit, but rather for the wholesale voiding of their marriage for all purposes. Because the Pennsylvania marriage recognition ban is **presently operating to void Plaintiffs' marriage**, the constitutional issues raised by Plaintiffs' claims are (1) fit for judicial review, and (2) Plaintiffs will continue to suffer hardship without court consideration. *See, e.g.*, *Pic-A-State PA, Inc. v. Reno*, 76 F.3d 1294, 1298 (3d Cir. 1996) (stating Supreme Court's two-part test for ripeness).[26]

As a separate matter, although Plaintiffs' injuries are much broader than issues regarding Plaintiffs' son's birth certificate and the operation of Pennsylvania law relating thereto, and although Plaintiffs' claims do not depend on the birth certificate, Defendant Corbett is incorrect about it as well. Defendant Corbett claims (at 59, 61-62 & Ex. A) that the only potential basis for Plaintiffs' claims that may be ripe for review is the failure to list Plaintiff Palladino on her son's birth certificate, but that Plaintiffs lack standing to base their claims on this occurrence

---

[26] Plaintiffs' claims also satisfy all three factors of the ripeness test that specifically applies to claims for declaratory judgment. *See, e.g.*, *Pic-A-State*, 76 F.3d at 1298. The first factor—adversity of interest—is satisfied because the "impact of the [marriage recognition ban] is sufficiently direct and immediate" in voiding Plaintiffs' marriage. *Id.* The second factor—conclusiveness—is satisfied because Plaintiffs' claims are based on "a real and substantial controversy . . . as distinguished from an opinion advising what the law would be on a hypothetical state of facts," considering that Plaintiffs are presently married under Massachusetts law, but reside in Pennsylvania, where their marriage is voided for all purposes. *Id.* at 1300 (internal quotation marks and citations omitted). In addition, further support exists for this second factor because the questions presented to this Court are "predominantly legal." *Id.* (internal quotation marks and citations omitted). Third and finally, the utility factor is satisfied because "resolution of this case will materially affect the parties" in that Plaintiffs will be considered married for all purposes in Pennsylvania. *Id.*

because Plaintiffs were treated the same way as any other couple, same- or opposite-sex, who uses genetically assisted conception. This argument is a red herring. Defendant Corbett's Exhibit A only applies in cases where an embryo is implanted into a gestational carrier with whom the embryo has no genetic connection. *See* Ex. A to Corbett Opp. at 1 ("The assisted contraception procedures described herein were developed to address situations in which the person giving birth (i.e., the gestational carrier) **has no genetic connection to the child**.") (emphasis added). This is inapplicable here because Plaintiff Barker carried and gave birth to her own son and Plaintiff Palladino already undertook the burden to be added to their son's birth certificate. *See* Barker Decl. (Doc. 27-2) ¶¶ 13, 15-16. If Plaintiffs were an opposite-sex couple, then Pennsylvania would have recognized their marriage, and the non-carrying parent would have been presumed to be the father, even though the child was conceived with donor sperm (so long as the mother had a genetic connection to the child). *See* Opening Br. at 8. But because Plaintiffs' same-sex marriage is not recognized in Pennsylvania, the marital presumption did not apply and Plaintiff Palladino was not automatically on the birth certificate. *See id.*

### B.    *Baker* Does Not Deprive This Court of Jurisdiction or Command its Decision.

In support of his Motion to Dismiss, Governor Corbett argues that the Supreme Court's disposition of the appeal in *Baker v. Nelson*, 409 U.S. 810 (1972), deprives this Court of subject matter jurisdiction over Plaintiffs' claims. *See* Brief of Defendant Governor Thomas Corbett in Support of Motion to Dismiss Pursuant to Fed. R Civ. P. 12(b)(1) & (6) (Doc. 20-1), at 16-23. Governor Corbett now appears to rely on *Baker* not for jurisdictional purposes but rather as precedent on the merits. *See* Corbett Opp. at 34-38. *Baker* neither deprives this Court of jurisdiction nor forecloses consideration of the merits of Plaintiffs' claims.

Plaintiffs previously noted the Third Circuit's decision in *Lecates v. Justice of Peace Court No. 4*, 637 F.2d 898 (3d Cir. 1980), for its discussion of the precedential value of summary

affirmances by the Supreme Court.  *See* Opening Br. at 24.  As noted by the Court of Appeals, "lower courts are not absolutely precluded from considering the merits of contentions that are similar to issues raised in a summarily affirmed case."  *Lecates*, 637 F.2d at 904.  Rather, "the precedential value of a summary disposition by the Supreme Court is to be confined to the exact facts of the case and to the precise question posed in the jurisdictional statement."  *Id.*  Here, Governor Corbett acknowledges that "several of the underlying facts in this case may be distinct from those in *Baker*" (Corbett Opp. at 35); although the point is not addressed by Governor Corbett in his Opposition Brief, the instant action also raises claims distinct from those in *Baker*. Under the principles explained in *Lecates*, *Baker* as precedent does not preclude this Court from considering Plaintiffs' claims.

As Plaintiffs previously explained, several other courts have reached the conclusion that *Baker* does not foreclose consideration of claims of the sort asserted here, particularly given doctrinal changes reflected in subsequent relevant Supreme Court authority (culminating in *Windsor*).  *See* Opening Br. at 24, n.20.  Since Plaintiffs filed their opening brief, additional courts have spoken to the issue in the same voice.  *See De Leon*, 2014 WL 715741, at *8-10 (concluding that *Baker* has no precedential value in light of doctrinal developments); *Bostic*, 2014 WL 561978, at *9-10 ("This Court concludes that doctrinal developments in the question of who among our citizens are permitted to exercise the right to marry have foreclosed the previously precedential nature of the summary dismissal in *Baker*."); *McGee v. Cole*, No. 3:13-24068, 2014 WL 321122, at *10 (S.D. W. Va. Jan. 14, 2014) (rejecting *Baker* as no longer binding); *Bishop*, 2014 WL 116013, at *16-17 (concluding that *Baker* is no longer a binding summary dismissal "as to these issues," the constitutionality of provision of state constitution

defining marriage as between man and woman).  *Baker* does not preclude this Court from considering Plaintiffs' claims.

### C.      Neither the Statute of Limitations Nor Laches Bars This Action.

Governor Corbett also argues (at 56-59) that Plaintiffs' claims are barred by Pennsylvania's two-year statute of limitations for personal injury actions and (as noted above) that Plaintiffs' claims are not yet ripe for adjudication.  No effort is made to harmonize these two positions: one that assumes that Plaintiffs' claims accrued more than two years ago, and one that assumes that they have not yet accrued.  However, neither position is correct.[27]

The Complaint does not seek legal relief; rather, it seeks injunctive relief and corresponding declaratory relief.  Plaintiffs suffer new harm each day their marriage is deemed invalid.  The Supreme Court long ago drew a distinction, for limitations purposes, between claims for legal relief and equitable relief under federal law.  Statutes of limitation are inapplicable under federal law to purely **equitable** claims in federal court, such as Plaintiffs' claim for injunctive relief in this case:

> [W]here the equity jurisdiction is exclusive and is not exercised in aid or support of a legal right, state statutes of limitations barring actions of law are inapplicable and in the absence of any state statute barring the equitable remedy in like cases, the federal court is remitted to and applies the doctrine of laches as controlling.

*Russell v. Todd*, 309 U.S. 280, 289 (1940).  The rule articulated in *Russell* is a general rule applicable to federal statutes that provide a cause of action.  *Id.* at 288 n.1.

The plaintiffs in *Russell* brought an action pursuant to the Federal Farm Loan Act, 12 U.S.C. § 812, seeking solely equitable relief.  *Id.* at 284.  The plaintiffs sought to hold

---

[27] With respect to statutes of limitation (rather than statutes of repose), it is hard to see how **both** positions could prevail.  *See Borer v. Chapman*, 119 U.S. 587, 602 (1887) ("It cannot be that the statute of limitations will be allowed to commence to run against a right until that right has accrued in a shape to be effectually enforced.").

shareholders of an insolvent joint stock land bank statutorily liable for the bank's debts.  *Id.*  In response to the defendants' argument based on a three-year statute of limitations, the Supreme Court observed that "[f]rom the beginning, equity, in the absence of any statute of limitations made applicable to equity suits, has provided its own rule of limitations through the doctrine of laches."  *Id.* at 287.  The Court affirmed the analysis of the lower courts that the statute of limitations did not bar the plaintiffs' request for equitable relief.

The key question under the analysis utilized in *Russell* is whether the relief sought is such that equity jurisdiction is exclusive.  Applying the principles of *Russell*, courts have recognized that "injunctive relief is based solely on equity's 'exclusive jurisdiction'."  *Fed. Election Comm'n v. Christian Coal.*, 965 F. Supp. 66, 71 (D.D.C. 1997) (citing 1 Pomeroy's Equity Jurisprudence, §§ 136, 138 (5th ed. 1941)).  "Where the jurisdiction is 'exclusive,' such as where the nature of the remedy is an injunction that is independent from the legal relief available, then the statute of limitations applicable to the legal relief is inapplicable to the injunctive relief."  *Id.* at 72 (citing *Russell*, 309 U.S. at 280).  Such claims therefore are not subject to state statutes of limitation.  This analysis has been applied to efforts under Section 1983 to obtain injunctive relief.  *See King v. Twp. of East Lampeter*, 17 F. Supp. 2d 394, 416 (E.D. Pa. 1998) ("There is, of course, no statute of limitations specifically applicable to requests for injunctive relief.").

Moreover, barring actions for purely injunctive relief based on such statutes would needlessly thwart the enforcement of federal civil rights statutes.  Statutes of limitation serve no constructive purpose when applied to purely injunctive relief aimed at changing the status quo.  As the Court of Appeals observed in another context:

> Limitations periods are designed to foreclose the potential for inaccuracies and unfairness brought about by a finding of liability based on stale evidence.  This interest is not in defending against

an old claim, but an interest in not being held ultimately liable on
that old claim based on old, less reliable evidence.

*Bell Atl. v. Pa. Util. Comm'n*, 273 F.3d 337, 346 (3d Cir. 2001), *cert. denied*, 537 U.S. 941
(2002) (citations omitted). Plaintiffs' claims raise no issues of "stale" or "old, less reliable"
evidence. Defendants are not at risk of being found liable based on testimony potentially
dimmed or altered because the relevant events took place more than two years ago. Plaintiffs'
claims turn not on historical facts obscured by the mists of time, but rather the facts as they exist
in 2014, and barring those claims on limitation grounds would undermine the civil rights laws
without any countervailing benefit to the administration of justice.

Nor can Defendants rely here on the doctrine of laches, although Governor Corbett
alludes to a laches defense. *See* Corbett Opp. at 57. Governor Corbett improperly attempts to
shift the burden to Plaintiffs, but it remains true that the defense of laches "requires proof of (1)
lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party
asserting the defense." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002)
(citations omitted). Here, Plaintiffs acted promptly to enforce their rights after *Windsor* was
decided (and it became entirely clear that state restrictions on same-sex marriages raised
substantial federal questions); Governor Corbett makes no effort to argue prejudice by reason of
any imagined delay on the part of Plaintiffs. Under these circumstances, Plaintiffs' claims for
injunctive and corresponding declaratory relief are not time-barred.

### D.    All Requirements for a Permanent Injunction Are Satisfied.

Defendant Corbett (at 64-65) challenges only the first two elements of the standard for a
permanent injunction: likelihood of success on the merits and irreparable harm.[28] The first

---

[28] Defendant Corbett "does not concede that Plaintiffs have met the last two required elements"
(Corbett Opp. at 65 n.15), but offers no argument challenging them. Plaintiffs meet these
elements—lack of harm to defendants or Pennsylvania citizens, and public interest—for the

element, likelihood of success on the merits, is satisfied for all of the reasons explained above.

On the second element, Defendant Corbett's argument that Plaintiffs have not suffered irreparable harm is, like many of his other arguments, premised on his overarching misconception of the nature of the harm for which Plaintiffs seek relief. Again, the alleged harm is not the denial of a particular set of benefits or any other particular economic loss that Defendant Corbett posits, but rather the wholesale voiding and non-recognition of Plaintiffs' marriage. Among other far-reaching legal, economic, and social consequences, the non-recognition of Plaintiffs' marriage denies Plaintiffs their constitutional rights, which constitutes *per se* irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Murray v. Silverstein*, 882 F.2d 61, 64 (3d Cir. 1989) (citations omitted); *see also De Leon*, 2014 WL 715741, at \*25 (granting preliminary injunction of Texas law prohibiting recognition of out-of-state same-sex marriage, based on irreparable harm of violation of constitutional rights); *Obergefell*, 2013 WL 6726688, at \*21-22 (same). There is no adequate remedy at law for the denial of these fundamental constitutional guarantees, and for the humiliation and stigmatization that results.

## IV.    CONCLUSION

For the reasons stated herein, in Plaintiffs' Motion for Summary Judgment (Doc. 26), and in the memorandum in support thereof (Doc. 27), Plaintiffs Cara Palladino and Isabelle Barker respectfully request that this Court grant their Motion for Summary Judgment.

---

same reasons explained in recent federal cases granting injunctions against state laws banning recognition of same-sex marriages. *See De Leon*, 2014 WL 715741, at \*25-27; *Obergefell*, 2013 WL 6726688, at \*21-22. In particular, there is no evidence that defendants or residents of the Commonwealth will be harmed by recognizing Plaintiffs' same-sex marriage, and "the public interest is promoted by the robust enforcement of Constitutional rights." *De Leon*, 2014 WL 715741, at \*25-26 (internal quotation marks and citations omitted); *Obergefell*, 2013 WL 2013 WL 6726688, at \*22.

Respectfully submitted,

Dated: March 12, 2014                    */s/ Eric Kraeutler*

Michael L. Banks (Pa. Bar I.D. No. 35052)
Eric Kraeutler (Pa. Bar I.D. No. 32189)
Joseph B.G. Fay (Pa. Bar I.D. No. 33480)
Vanessa R. Brown (Pa. Bar I.D. No. 315115)
Elisa P. McEnroe (Pa. Bar I.D. No. 206143)
Melina R. DiMattio (Pa. Bar I.D. No. 309787)
William O. Mandycz (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA  19103-2921
215.963.5000 (telephone)
215.963.5001 (fax)
mbanks@morganlewis.com
ekraeutler@morganlewis.com
jfay@morganlewis.com
vbrown@morganlewis.com
emcenroe@morganlewis.com
mdimattio@morganlewis.com
wmandycz@morganlewis.com

Benjamin L. Jerner (Pa. Bar I.D. No. 76202)
Tiffany L. Palmer (Pa. Bar I.D. No. 82695)
**JERNER & PALMER, P.C.**
5401 Wissahickon Avenue
Philadelphia, PA 19144
215.843.6000 (telephone)
215.843.6006 (fax)
TPalmer@JPLaw.com
BJerner@JPLaw.com

*Attorneys for Plaintiffs*